_____

JASON IRVINE,

                Plaintiff,              Civil Action No.
                                        5:14-CV-1565 (LEK/DEP)

     v.

CITY OF SYRACUSE, *et al.*,

                Defendants.

_____

APPEARANCES:

FOR PLAINTIFF:

JASON IRVINE, *Pro se*
14-B-0548
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

FOR DEFENDANTS:

[NONE]

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

     This is an action brought by *pro se* plaintiff Jason Irvine, who is

currently a New York State prison inmate, against the City of Syracuse,

three employees of the Syracuse City Police Department, and the

Onondaga County Sheriff, pursuant to 42 U.S.C. § 1983, claiming that they violated his civil rights. Plaintiff's complaint, together with an accompanying application for leave to proceed *in forma pauperis* ("IFP"), have been forwarded to me for review. For the reasons set forth below, plaintiff's IFP application is granted, and I recommend that plaintiff's claims against Onondaga County Sheriff Kevin Walsh, the City of Syracuse, and Sergeants Brian Fougnier and J.P. Locastro be dismissed with leave to replead.

I.     BACKGROUND

Plaintiff commenced this action on December 24, 2014. Dkt. No. 1. The claims set forth in plaintiff's complaint stem from an incident that occurred on May 11, 2013, and the events that followed. *See generally id.* According to the complaint, on that date plaintiff was confronted by two unidentified police officers and was thereafter taken into custody and assaulted. *Id.* at 6-7. While later being processed at police headquarters, plaintiff complained of pain and was escorted by the two officers to Upstate University Hospital ("Upstate"). *Id.* at 7. Although it is not clear from plaintiff's complaint what transpired at the hospital, he alleges that the officers informed him "that their [sic] was nothing wrong with him, and that

he was fine in spite of the discharge plan that was denied to him." *Id.*

Additionally, although plaintiff contends that defendants Matthew Liadka

and Alexander J. Cazzolli, both of whom are Syracuse Police Officers,

denied his request for further medical attention, it is not clear from the

complaint whether defendants Liadka and Cazzolli are the officers who

escorted plaintiff to the hospital, or if plaintiff requested further medical

attention from these individuals while confined either at police headquarters

or the Onondaga County Justice Center, where plaintiff was apparently held

following his visit to the hospital. *Id.*

     Plaintiff was again taken to Upstate on May 16, 2013, complaining of

pain and swelling. Dkt. No. 1 at 7. Upon examination and testing, it was

determined that plaintiff had suffered from pulled muscles, sprained ribs, a

chest wall contusion, a swollen spleen, and other injuries as a result of the

assault. *Id.*

     Plaintiff alleges that defendants Brian Fougnier and J.P. Locastro,

both of whom are identified as Syracuse Police Sergeants, "had a duty and

obligation to investigate into the matters regarding the assault upon [him],"

and that defendant Kevin E. Walsh, the Onondaga County Sheriff, is liable

because defendant Walsh "is responsible for all Officers within his

jurisdiction." Dkt. No. 1 at 7-8. According to plaintiff, defendant City of Syracuse "is liable for the actions of all of its Officials when their [sic] is a persistent and widespread discriminatory practice[.]" *Id.* at 8.

II.   DISCUSSION

A.   Application to Proceed IFP

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[1] In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application is granted.[2]

---

[1]     The total cost for filing a civil action in this court is $400.00 (consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00). Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

[2]     Plaintiff is reminded that, although his IFP application is granted, he is still required to pay fees that he incurs in this action, including copying and/or witness fees.

B.    <u>Sufficiency of Plaintiff's Claims</u>

1.    <u>Standard of Review</u>

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See*, *e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also* *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if

the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). It "'is not itself a source of substantive rights[,] . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)

(quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim

pursuant to section 1983, a plaintiff must allege "(1) 'that some person has

deprived him of a federal right,' and (2) 'that the person who has deprived

him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d

75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

2.    Review of Plaintiff's Claims

Liberally construed, plaintiff's complaint asserts three causes of action

against defendants, including excessive force, a violation of due process,

and deliberate medical indifference. *See generally* Dkt. No. 1.

a.    Excessive Force

Plaintiff's complaint alleges that the defendants violated his right

under the Eighth Amendment to be free from cruel and unusual punishment

through the use of excessive force. Dkt. No. 1 at 6-7, 9. It is not clear from

the complaint, however, who committed the alleged assault against him on

May 11, 2013. *Id.* at 6. Plaintiff alleges that the same unidentified officers

who assaulted him also escorted him to Upstate the first time and informed

him "their [sic] was nothing wrong with him." *Id.* at 6-7. In the next sentence,

plaintiff alleges that "[w]hen [he] requested to speak with the Medical Staff,

regarding his injuries, he was denied by [defendants] Liadka and Cazzolli[.]"

*Id.* at 7. Accordingly, liberally construed, it appears the excessive force claims are asserted against defendants Liadka and Cazzolli.

The Eighth Amendment prohibits punishments that are "incompatible with 'the evolving standards decency that mark the progress a maturing society[,]' or 'involved[s] the unnecessary in wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (citations omitted)). The Eighth Amendment, however, only applies to individuals convicted of a crime. *See Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986))). In this case, because plaintiff had not been convicted of a crime at the time of the alleged use of excessive force, the Eighth Amendment does not apply to his excessive force claim. Instead, claims of excessive force during the course of an arrest are analyzed under the Fourth Amendment. *Tenn. v. Garner*, 471 U.S. 1, 7-22 (1985); *accord, Graham*, 490 U.S. at 395 (1989) ("Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law

enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment[.]"). A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). With this standard in mind, and having carefully review plaintiff's complaint, I find that the pleading contains sufficient facts to survive review under section 1915(e). In so ruling, I express no opinion regarding whether the excessive force claim as asserted in the complaint may withstand a properly filed motion to dismiss or for summary judgment.

b.    Due Process

Plaintiff also asserts a due process claim against the defendants, alleging they violated his rights by participating in the use of allegedly excessive force "and/or covering up the use of excessive force[.]" Dkt. No. 1 at 9. Construed liberally, it appears plaintiff asserts this claim against defendants Liadka and Cazzolli for their participation in the use of force and

against unidentified individuals for their alleged concealment of evidence regarding the use of force. Dkt. No. 1 at 7, 9.

The Due Process Clause of the Fourteenth Amendment contains both a substantive and procedural component. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The substantive component "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon*, 494 U.S. at 125 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) ("Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." (quotation marks omitted)). Courts analyzing substantive due process claims must first "identify the constitutional right at stake." *Kaluczky*, 57 F.3d at 211. "Where a [section] 1983 plaintiff alleges a cause of action protected by an explicit textual source of the Constitution, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing that claim." *Id.* (quotation marks omitted).

Plaintiff's claim against defendants Liadka and Cazzolli must fail because, as discussed above in Part II.B.2.a., it is rooted in the Fourth

Amendment and does not state a generalized violation of substantive due process. As for plaintiff's claim asserted against the unidentified defendants regarding a "cover[] up," even assuming this allegation implicates plaintiff's constitutional rights, it must fail because plaintiff merely alleges that "the defendants . . . cover[ed] up the use of excessive force and assault against [him]" without either identifying which individuals, in particular, participated in the cover up or alleging any facts to support this conclusory allegation. Without more, plaintiff's due process claim fails to allege facts plausibly suggesting that any of the named defendants violated plaintiff's due process rights. Accordingly, I recommend that plaintiff's due process claims be dismissed.

### c.    Deliberate Medical Indifference

Plaintiff also asserts a claim of deliberate medical indifference against defendants Liadka and Cazzolli. Dkt. No. 1 at 7. Because at the time plaintiff requested medical attention, he was pretrial detainee, his medical indifference claims are governed by the due process clause of the Fourteenth Amendment. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). To state a cognizable deliberate medical indifference claim under the Fourteenth Amendment, a plaintiff must allege facts plausibly suggesting

13

that he "had a serious medical condition that was met with deliberate indifference." *Cuoco*, 222 F.3d at 106 (quotation marks omitted).

In this case, plaintiff alleges that defendants Liadka and Cazzolli denied his request for medical attention after he was taken into custody and complained of pain. Dkt. No. 1 at 7. Plaintiff also alleges that, once he was provided medical treatment, testing revealed that he "suffered from pulled muscles, sprained ribs, a chest wall contusion, swollen spleen, and other injuries due to the assault" by the defendant police officers. *Id.* I find these allegations are sufficient to survive review at this early procedural juncture under section 1915(e), and defendants should be required to respond to this portion of plaintiff's complaint. Once again, in so ruling, I express no opinion regarding whether the medical indifference claim as asserted in the complaint may withstand a properly filed motion to dismiss or for summary judgment.

d.   <u>Municipal Liability</u>

Plaintiff's claims against defendant City of Syracuse implicate municipal liability under *Monell v. N.Y. City Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). To state a claim against a municipality for a constitutional violation pursuant to section 1983, a plaintiff must allege that

14

"the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell*, 436 U.S. at 690. A municipality, however, cannot be held liable under section 1983 for the "actions alleged to be unconstitutional by its employees below the policymaking level on the basis of *respondeat superior*." *Zahra v. Town of Southbold*, 48 F.3d 674, 685 (2d Cir. 1995); *see also Monell*, 436 U.S. at 691. To prevail on a section 1983 claim against a municipality, a plaintiff must demonstrate that the policy, ordinance, regulation, or decision adopted by the municipality, and implemented by its employee(s), caused the plaintiff's alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92. This can be shown by establishing either that the policy itself is unconstitutional or that the application of an otherwise unlawful policy is unconstitutional. *Amnesty Am. v. Town of Hartford*, 361 F.3d 113, 125-25 (2d Cir. 2004).

In this instance, plaintiff's complaint only alleges in conclusory terms that defendant City of Syracuse promulgated a "a persistent and widespread discriminatory practice[.]" Dkt. No. 1 at 8. Plaintiff has failed to identify a specific practice or policy, however, pursuant to which defendants

Liadka and Cazzolli allegedly assaulted him. *Id.* Indeed, quite to the contrary, plaintiff characterizes those officers as "rogue agents with no regard for the rules, policies, or procedures set forth by the City of Syracuse Police Department Operations Manual. " *Id.* While it is true that a municipality can be held accountable for the excessive use of force by a police officer upon proof that the municipality's policymakers were "knowingly and deliberately indifferent to the possibility that its police officers were wont" to commit constitutional violations, there are no allegations in plaintiff's complaint in this case that plausibly suggest defendant City of Syracuse possessed that specific knowledge with respect to defendants Liadka and Cazzolli.[3] *See, e.g., Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 326-27 (2d. Cir. 1986).

Municipal liability may also attach based upon the failure of a municipality to properly train "its employees where [the governmental

---

[3]    In addition, it is well-established that a single incident is generally insufficient to raise the inference of the existence of a custom of policy potentially giving rise to admissible liability. *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.W. 163 (1993); *but see Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980) (noting that, where a plaintiff alleges excessive force by police, "a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge"). In this instance, plaintiff's allegations fail to support the conclusion that the exception to this general rule should apply.

agency] acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am.*, 361 F.3d at 129 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-90 (1989)). To establish liability under this theory, however, a plaintiff must identify a particular deficiency in the municipality's training regimen that "'actually caused'" a constitutional deprivation. *Amnesty Am.*, 361 F.3d at 129 (quoting *City of Canton, Ohio*, 489 U.S. at 390-91); *see also Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 173 (D. Conn. 2003). As the Second Circuit has noted,

> [t]he elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability.

*Amnesty Am.*, 361 F.3d at 130. In this instance, plaintiff's complaint does not allege any specific inadequacy in the training protocols of the Syracuse City Police Department, nor does it contain other factual allegations plausibly suggesting that municipality liability is applicable based on a failure-to-train theory. I therefore recommend that plaintiff's *Monell* claim against defendant City of Syracuse be dismissed.

17

### e. Remaining Claims Asserted Against Defendants Fougnier, Locastro, and Walsh

Although plaintiff names defendant Walsh in his complaint, it is not clear what cause of action is being asserted against him. The only allegation in the complaint that involve Sheriff Walsh states that he, "as the County Sheriff[,] is responsible for all Officers within his jurisdiction, and to ensure that they are properly trained and of sound mental health in which to do their duties to the community." Dkt. No. 1 at 7. Whatever the nature of the claim plaintiff has attempted to assert against defendant Walsh may be, it is clear he intends to assert the claim based on Walsh's capacity as the head of the Onondaga County Sheriff's Department. Similarly, to the extent that plaintiff's complaint may be construed as asserting any claims against defendants Fougnier and Locastro, they are based on those individuals' supervisory capacities. Specifically, plaintiff's complaint alleges defendants Fougnier and Locastro are the "immediate supervisors" of defendants Liadka and Cazzolli and "had a duty and obligation to investigate into the matters regarding the assault upon [him] by the Officers." *Id.*

Setting aside the fact that defendant Walsh is the Onondaga County Sheriff and does not supervise police officers employed by the City of

Syracuse, it is well established that, as supervisors, defendants Fougnier, Locastro, and Walsh cannot be held liable for damages under section 1983 solely by virtue of their roles as supervisors, nor can their liability be predicated upon *respondeat superior*. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d 496, 501 (1994). To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

In this instance, there are no allegations in plaintiff's complaint suggesting that defendants Fougnier, Locastro, or Walsh participated in or witnessed the use of excessive force, or that, while the event was ongoing,

they learned of it but failed to act to protect him from harm. *See generally* Dkt. No. 1. Moreover, because the only facts alleged involving these individuals concerns their roles and obligations as supervisors and are set forth in wholly conclusory fashion, there is no basis for a section 1983 claim against them. *See, e.g., id.* at 9 ("THE PLAINTIFF ALLEGES AGAINST THE DEFENDANTS THAT THEY FAILED IN THEIR SUPERVISORY CAPACITY TO OVERSEE AND SUPERVISE THEIR OFFICERS, AND STAFF . . . THROUGH THEIR GROSS NEGLIGENCE[.]"). Under these circumstances I recommend that plaintiff's claims against defendants Fougnier, Locastro, and Walsh be dismissed for lack of personal involvement.

C.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not

20

determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail in his pleading. Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In

addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV.     <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this action asserts excessive force claims against two Syracuse Police Officers, Matthew Liadka and Alexander Cazzolli, and derivative claims against Syracuse Police Sergeants Brian Fougnier and J.P. Locastro, as well as Onondaga County Sheriff Kevin E. Walsh and the City of Syracuse, alleging that they were aware of but failed to remedy the constitutional deprivation, and that the violations occurred as a result of a failure to properly train and supervise defendants Liadka and

Cazzolli. Having carefully reviewed plaintiff's complaint I conclude that, with the exception of his excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, plaintiff's claims should be dismissed with leave to amend.

Based upon the foregoing, it is hereby

ORDERED that plaintiff's application for leave to proceed in this action *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that, with the exception of his excessive force and deliberate medical indifference claims asserted against defendants Liadka and Cazzolli, plaintiff's remaining claims in this action, including all of those asserted against defendants Fougnier, Locastro, Walsh, and the City of Syracuse, be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    April 22, 2015
          Syracuse, New York